UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| SHYANE HARDEN,<br><br>Plaintiff,<br><br>v.<br><br>OGDEN SCHOOL DISTRICT; and CITY OF OGDEN'S POLICE DEPARTMENT,<br><br>Defendants. | **REPORT AND RECOMMENDATION TO GRANT OGDEN CITY POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 34), GRANT IN PART AND DENY IN PART OGDEN SCHOOL DISTRICT'S MOTION FOR SUMMARYJUDGMENT (DOC. NO. 28), AND ENTER JUDGMENT FOR DEFENDANTS ON ALL CLAIMS**<br><br>Case No. 1:24-cv-00179<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

Shyane Harden, proceeding without an attorney, brought this civil rights action against Ogden School District and the Ogden City Police Department following a contentious meeting (which a police officer attended) with staff at her child's elementary school.[1]  Mr. Harden contends the school district trespassed her from its property and disenrolled her children without proper notice after this meeting, and police officers refused to let her file a police report regarding the school's alleged abuse of her child.[2]  Ms. Harden brings claims under 42 U.S.C. § 1983, alleging (1) the Police Department

---

[1] (Compl., Doc. No. 1.)  Ms. Harden also named James Madison Elementary School as a defendant, but that party was dismissed because it is not a suable legal entity.  (*See* Mem. Decision & Order Adopting R. & R. Granting Mot. to Dismiss, Doc. No. 31; R. & R. to Grant James Madison Elementary School's Mot. to Dismiss, Doc. No. 26.)

[2] (Compl. ¶¶ 5–8, 10–11, Doc. No. 1.)

retaliated against her for protected speech in violation of the First Amendment, and
(2) the Police Department and School District violated her Fourteenth Amendment due
process rights.[3]

Both defendants have moved for summary judgment, asserting Ms. Harden failed
to adequately plead or offer evidence supporting her claims.[4]  The Police Department
relies solely on the allegations in Ms. Harden's complaint, while the School District
offers declarations and other evidence supporting its motion, including a video of Ms.
Harden's meeting with school staff.[5]  After the response deadlines passed, Ms. Harden
filed four exhibits[6]—but she did not otherwise respond to the motions.

As explained below, the School District's motion should be denied to the extent it
seeks summary judgment on a claim Ms. Harden did not assert against the School
District (the First Amendment retaliation claim).  But the School District and Police
Department are entitled to summary judgment on all claims asserted in Ms. Harden's
complaint, where she does not adequately plead her claims or identify supporting

---

[3] (*Id.* at 4–8.)  Ms. Harden also references an Oregon state statute and an unspecified
"Utah State Human Rights Law."  (*Id.* ¶¶ 49–50.)  Where she does not assert separate
causes of action under these laws, or otherwise explain their applicability to this case,
the court does not construe her complaint as raising state law claims.

[4] (Ogden School District's Mot. for Summ. J. (School District MSJ), Doc. No. 28; City of
Ogden's Police Department's Mot. for Summ. J. (Police Department MSJ), Doc. No.
34.)

[5] (*See* App. of Exs. to School District MSJ, Doc. No. 28-1; Ex. K to School District MSJ,
Video Recording, Doc. No. 32 (sealed).)

[6] (Exs. 317–320, Doc. Nos. 35, 35-1, 35-2, & 35-3.)

evidence giving rise to a triable dispute of fact.  Accordingly, the undersigned[7] recommends the district judge grant the Police Department's motion for summary judgment,[8] grant in part and deny in part the School District's motion for summary judgment,[9] and enter judgment for the defendants on all claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."[11]  But "where the non-moving party will bear the burden of proof at trial on a dispositive issue[,] that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."[12]

A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[7] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (*See* Doc. No. 13.)

[8] (Doc. No. 34.)

[9] (Doc. No. 28.)

[10] Fed. R. Civ. P. 56(a).

[11] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

[12] *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (citation modified) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

admissions, interrogatory answers, or other materials."[13]  This means "unsupported

conclusory allegations [] do not create a genuine issue of fact,"[14] and "mere speculation

unsupported by evidence is insufficient to resist summary judgment."[15]

Because Ms. Harden proceeds pro se, her filings are liberally construed and held

"to a less stringent standard than formal pleadings drafted by lawyers."[16]  Still, pro se

parties must follow the same rules of procedure that govern other litigants.[17]  For

instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a

recognized legal claim could be based."[18]  While courts must make some allowances for

a pro se plaintiff's "failure to cite proper legal authority, [her] confusion of various legal

theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading

requirements,"[19] courts "will not supply additional factual allegations to round out a

plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[20]

---

[13] Fed. R. Civ. P. 56(c)(1)(A).

[14] *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) (citation modified).

[15] *Martinez v. CO2 Servs.*, 12 F. App'x 689, 695 (10th Cir. 2001) (unpublished) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144–45 (10th Cir. 1998)).

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[18] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[19] *Hall*, 935 F.2d at 1110.

[20] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

## BACKGROUND

Where the Police Department's motion relies solely on Ms. Harden's complaint, Ms. Harden's allegations and claims are reviewed first.  The undisputed facts are set out next, based on the materials the School District and Ms. Harden submitted.

### A.  Ms. Harden's Complaint

According to the complaint, Ms. Harden attended an IEP[21] meeting at James Madison Elementary School on October 22, 2022.[22]  An Ogden City police officer, Travis Williams, attended the meeting at Ms. Harden's request.[23]  During the meeting, Ms. Harden "alleged that she believe[d] a staff from James Madison Elementary School were abusing her non-verbal autistic son."[24]  Ms. Harden and a staff member, Heather West, "exchanged words."[25]  Officer Williams asked Ms. Harden to leave the room while he spoke to staff.[26]

After the meeting, Ms. Harden informed Officer Williams that she would like to file a police report, but Officer Williams refused to file the report "in retaliation[,] claiming

---

[21] As explained in the School District's motion, an IEP, or Individualized Education Plan, is a written statement of the educational program designed to meet a child's individual needs and is utilized for children with disabilities.  (School District MSJ 6 n.32, Doc. No. 28.)

[22] (Compl. ¶¶ 1–2, Doc. No. 1.)  As noted below, the School District provides evidence this meeting occurred on October 20, 2022.

[23] (*Id.* ¶¶ 2, 5.)

[24] (*Id.* ¶ 2.)

[25] (*Id.* ¶¶ 4, 20.)

[26] (*Id.* ¶ 20.)

she had threatened him."[27]  Officer Williams also provided a "false statement that [she] threatened to kill him" to his supervisor.[28]  Ms. Harden asserts Officer Williams' refusal "denied her law enforcement because of her 1st Amendment [speech] by exchanging words with James Madison Staff Heather West."[29]

After returning home, Ms. Harden called the police, asked to speak to a supervisor, and requested that another officer be dispatched.[30]  But "Supervisor Fisher" stated he would not send any officers because she had threatened to kill the last officer, Officer Williams.[31]

On November 7, 2022, Ms. Harden learned through police incident reports that the school's principal, Julie Neilson,[32] withdrew both of Ms. Harden's children from school "without notice or a hearing with the board of education."[33]  Principal Neilson "claim[ed] she had been trying to contact Ms. Harden," which was "false."[34]  Ms. Harden

---

[27] (*Id.* ¶ 5.)

[28] (*Id.* ¶ 30.)

[29] (*Id.* ¶ 6.)

[30] (*Id.* ¶ 7.)

[31] (*Id.* ¶¶ 8, 22.)

[32] The complaint provides the principal's name as "Julian Nelson," but her name is actually Julie Neilson.  (*See* Ex. A to School District MSJ, Decl. of Julie Neilson (Neilson Decl.), Doc. No. 28-2.)

[33] (Compl. ¶¶ 10, 23, Doc. No. 1.)

[34] (*Id.* ¶ 10.)

emailed Principal Neilson and Assistant Principal Mangum[35] "but never received a response regarding the complaint against staff leaving bruises on her son."[36]  Principal Neilson later trespassed Ms. Harden from all Ogden School District properties.[37] Because of this, Ms. Harden was "forced to homeschool each of her children which resulted in the loss of employment."[38]

Ms. Harden brings two claims under 42 U.S.C. § 1983: a First Amendment retaliation claim against Ogden City Police Department, and a Fourteenth Amendment claim against both defendants.[39]  In her First Amendment claim, she asserts Officer Williams and Supervisor Fisher retaliated against her because of her speech ("exchang[ing] words" with Ms. West), by refusing to let her file a police report and by failing to investigate her allegation of child abuse.[40]

In her Fourteenth Amendment claim, Ms. Harden asserts Officer Williams and Supervisor Fisher "failed to investigate[] and follow proper procedures" and "used retaliation in [an] effort to not allow Ms. Harden due process."[41]  She also asserts the

---

[35] The complaint provides this person's name and title as "Vice Principal Magum," but he is actually assistant principal Jordan Mangum.  (*See* Ex. C to School District MSJ, Decl. of Jordan Mangum (Mangum Decl.), Doc. No. 28-4.)

[36] (Compl. ¶ 11, Doc. No. 1.)

[37] (*Id.*)

[38] (*Id.* ¶ 24.)

[39] (*Id.* at 4–8.)  Ms. Harden states each claim twice, first labeling them as "counts," then as "causes of action."

[40] (*Id.* ¶¶ 28–31, 42.)

[41] (*Id.* ¶ 46.)

School District violated her Fourteenth Amendment rights by failing to "investigate the abuse matter," withdrawing her children without a board meeting, and failing to inform her that her children were being withdrawn.[42]  She seeks compensatory and punitive damages.[43]

### B.  Undisputed Facts[44]

Ms. Harden's child was enrolled in second grade at James Madison Elementary School in the fall of 2022.[45]  In early October, Ms. Harden called the school to complain about her child's class schedule and a lack of communication with her child's teacher, Heather West.[46]  The school scheduled a meeting for October 20 between Ms. Harden and Ms. West, assistant principal Jordan Mangum, and special education teacher

---

[42] (*Id.* ¶¶ 36–39.)

[43] (*Id.* ¶ 50; *id.* at 9.)

[44] These facts are primarily drawn from declarations and exhibits the School District filed with its summary judgment motion.  More than two months after this filing, Ms. Harden filed four exhibits, numbered 317 through 320.  Exhibit 317 shows text messages between Ms. Harden and "Hanan from Child [P]rotective [S]ervices."  (Doc. No. 35.) This exhibit is referenced in the court's recitation of undisputed facts.  The police report at Exhibit 320 is duplicative of an exhibit the School District filed.  (*Compare* Pl.'s Ex. 320, Doc. No. 35-3, *with* Ex. H to School District MSJ, Doc. No. 28-9.)  The other two exhibits bear no apparent connection to the allegations and claims in this case.  (*See* Pl.'s Ex. 318, Doc. No. 35-1 (text conversation between Ms. Harden and another parent, discussing concerns about the school's treatment of the other parent's child); Pl.'s Ex. 319, Doc. No. 35-2 (email regarding misconduct by an employee of a different school).)

[45] (Ex. E to School District MSJ, Doc. No. 28-6.)

[46] (Ex. C to School District MSJ, Mangum Decl. ¶ 16, Doc. No. 28-4.)

Robyn McFarlane to address her concerns.[47]  At Ms. Harden's request, police officer Travis Williams also attended the meeting.[48]

During the October 20 meeting, Ms. Harden initially raised concerns about a lack of communication with Ms. West.[49]  She then began slapping her hands on the desk and accused unknown school staff of "putting their hands on" her child.[50]  She stated: "[E]very [expletive] staff in here, if I find out somebody's putting their hands on my [child], . . . there's enough trees outside for every-[expletive]-body to hang off of . . . ."[51]  Officer Williams told Ms. Harden if she was "not going to be nice," he would ask her to leave.[52]  Ms. Harden then demanded to leave with her child.[53]  The meeting ended, and she left the school with her child.[54]

After the meeting, Mr. Mangum immediately opened an investigation into Ms. Harden's allegation of abuse.[55]  During the next two days, Mr. Mangum interviewed Ms. West and several other staff members who worked in her classroom.[56]  Based on these

---

[47] (*Id.* ¶ 17.)

[48] (*See* Ex. J to School District MSJ, Incident Report, Doc. No. 28-11.)

[49] (*See* Ex. K to School District MSJ, Video Recording at 2:00–2:40, Doc. No. 32 (sealed).)

[50] (*Id.* at 2:30, 2:58–3:47.)

[51] (*Id.* at 3:47–4:05.)

[52] (*Id.* at 4:06–4:12.)

[53] (*Id.* at 4:12–5:00.)

[54] (Ex. D to School District MSJ, Decl. of Robyn McFarlane ¶¶ 8–11, Doc. No. 28-5.)

[55] (Ex. C to School District MSJ, Mangum Decl. ¶ 18, Doc. No. 28-4.)

[56] (*Id.* ¶¶ 19–21.)

interviews, Mr. Mangum concluded there was no evidence of abuse toward Ms. Harden's child and decided no further action was needed.[57]

On October 21, Ms. Harden responded to a text message from "Hanan with Child [P]rotective [S]ervices," reporting that her child was not eating, "slept all day yesterday," was "not acting normal," and had a "fresh mark like yesterday."[58] The person advised Ms. Harden to take her child to his regular doctor for a checkup.[59]

Ms. Harden's two children never returned to James Madison Elementary School following the October 20 meeting.[60] Pursuant to Utah State Board of Education rules, a school district may not keep students enrolled if it is not serving them.[61] Accordingly, the School District has a "ten day drop" policy, by which students who are absent for more than ten consecutive, unexcused days are unenrolled.[62] After unenrollment, if students seek to re-enroll, the school will "welcome them back and do all [it] can to

---

[57] (*Id.* ¶¶ 22–23.)

[58] (Pl.'s Ex. 317, Doc. No. 35.) Ms. Harden also texted a photograph, the contents of which are not clearly visible.

[59] (*Id.*)

[60] (Ex. C to School District MSJ, Mangum Decl. ¶ 28, Doc. No. 28-4; Ex. B to School District MSJ, Decl. of Heather West (West Decl.) ¶ 21, Doc. No. 28-3.)

[61] *See* Utah Admin. Code § R277-419-5(4)(a) ("For a student primarily enrolled in an attendance validated program, the [local education agency] may not count a student as an eligible student [for enrollment] if the eligible student has unexcused absences during the prior ten consecutive school days.").

[62] (*See* Ex. P to School District MSJ, "MEMO – Ten Day Drop Procedures," Doc. No. 28-17.)

ensure they are placed back in the classroom/schedule they had previously where possible."[63]

Between October 31 and November 4, Ms. Harden sent more than a dozen emails to James Madison staff, many containing profanity and violent threats toward staff members.[64]  For example, she stated: "eve[r]y [expletive] staff in JAMES MADISON ELEMENTARY SCHOOL must die during this next school shooting"; "I will take yo [sic] [expletive] FACE OFF"; "YOUR ENTIRE FACE WILL BE MISSING"; and "You better hope don't none of them kids blow ya [expletive] heads off."[65]  None of Ms. Harden's emails mentioned her child's education or treatment at school.[66]

Principal Julie Neilson was seriously concerned about these emails, and "terrified" for the safety of both Ms. Harden's children and the school's staff and students.[67]  On November 4, in response to these emails, the School District's legal counsel sent Ms. Harden a "Notice not to enter onto property of James Madison Elementary School or Odgen School District offices without prior written approval and Notice to cease and desist from abusive and disruptive conduct."[68]  The notice stated

---

[63] (*Id.*)

[64] (Exs. Q, R, & S to School District MSJ, Doc. Nos. 28-18, 28-19, & 28-20.)

[65] (Ex. Q to School District MSJ, Doc. No. 28-18 at 2; Ex. R to School District MSJ, Doc. No. 28-19 at 4–5; Ex. S to School District MSJ, Doc. No. 28-20 at 2.)  Citations to these documents refer to CM/ECF pagination.

[66] (*See generally* Exs. Q, R, & S to School District MSJ, Doc. Nos. 28-18, 28-19, & 28-20.)

[67] (Ex. A to School District MSJ, Neilson Decl. ¶ 11, Doc. No. 28-2.)

[68] (Ex. T to School District MSJ, Notice dated Nov. 4, 2022, Doc. No. 28-21.)

that if Ms. Harden wished to enter School District property for "a particular purpose (for example[,] if you feel that it is necessary in connection with the education needs of a child), such request should be submitted in writing by email . . . at least 24 hours in advance."[69]  The notice also outlined procedures for Ms. Harden to contact the School District by phone, and noted she could access her children's education records via an online portal.[70]  Ms. Harden responded with another expletive-filled email the next day, telling the attorney not to email her again.[71]

On November 8, James Madison administrators held a safety meeting to review protocols in the event Ms. Harden violated the trespass notice.[72]  The staff also discussed that they would unenroll Ms. Harden's children under the "ten day drop" policy because the children had not attended school since October 20 (more than ten school days earlier).[73]  School staff attempted to contact Ms. Harden to ask if she intended to withdraw her children from school, and to inform her they would be unenrolled if they did not return.[74]  No one was able to reach Ms. Harden and she did not respond to voice messages.[75]  The next day, November 9, the School District

---

[69] (*Id.*)

[70] (*Id.*)

[71] (Ex. U to School District MSJ, Doc. No. 28-22.)

[72] (Ex. A to School District MSJ, Neilson Decl. ¶ 13, Doc. No. 28-2.)

[73] (*Id.*)

[74] (*Id.* ¶ 14; Ex. C to School District MSJ, Mangum Decl. ¶ 28, Doc. 28-4.)

[75] (Ex. A to School District MSJ, Neilson Decl. ¶ 14, Doc. No. 28-2; Ex. C to School District MSJ, Mangum Decl. ¶ 29, Doc. 28-4.)

unenrolled Ms. Harden's children.[76]  During the ensuing months, Ms. Harden sent

dozens more threatening emails and made threating posts on Principal Neilson's

Facebook page, leading the school to request an increased police presence.[77]

**ANALYSIS**

I.    Ogden City Police Department's Motion for Summary Judgment

The Ogden City Police Department argues it is entitled to summary judgment on

Ms. Harden's § 1983 claims because she does not plead facts or identify evidence

supporting either (1) municipal liability or (2) constitutional violations by individual

officers.[78]  Because the Police Department is correct as to the first issue, the court need

not reach the second issue.

As an initial matter, the Ogden City Police Department is not an independent

legal entity subject to suit.  "The law of the state in which the district court sits governs

the capacity of a governmental entity to sue or to be sued."[79]  In Utah, municipalities

may sue or be sued,[80] but there is no statutory authority permitting lawsuits against

---

[76] (Ex. C to School District MSJ, Mangum Decl. ¶ 30, Doc. 28-4.)

[77] (Ex. A to School District MSJ, Neilson Decl. ¶¶ 16–22, Doc. No. 28-2.)

[78] (Police Department MSJ 1–2, Doc. No. 34.)

[79] *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished) (citing Fed. R. Civ. P. 17(b)).

[80] Utah Code Ann. § 10-1-202.

municipal subdivisions such as police departments.[81]  As a result, the Ogden City Police

Department is not a legal entity subject to suit separate from the city.[82]

     Some courts have construed pro se complaints against a governmental

subdivision as asserting a claim against the main governmental entity.[83]  But even

liberally construing Ms. Harden's complaint as asserting a claim against Ogden City, her

claims still fail because she does not adequately plead facts or identify evidence

supporting her claims.

     Section 1983 provides a recovery mechanism for violations of federal rights in

certain circumstances.[84]  "To establish a cause of action under section 1983, a plaintiff

must allege (1) deprivation of a federal right by (2) a person acting under color of state

law."[85]  But "a local government may not be sued under § 1983 for an injury inflicted

---

[81] *See Kojima v. Lehi City*, No. 2:13-cv-00755, 2015 U.S. Dist. LEXIS 92072, at *10–11 (D. Utah July 14, 2015) (unpublished).

[82] *See id.* (finding Utah law does not permit a city's policy department to be sued); *see also Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (unpublished) ("Generally, governmental sub-units are not separate suable entities that may be sued under § 1983.").

[83] *See, e.g.*, *Faircloth v. Wilcox*, No. 2:24-cv-00807, 2024 U.S. Dist. LEXIS 213388, at *1 n.2 (D. Utah Nov. 21, 2024) (unpublished) ("Plaintiff actually names Salt Lake County Sheriff's Office as the defendant.  However, the sheriff's office is not an entity that can sue and be sued.  Thus, an official-capacity claim is construed to be against the main governmental entity, Salt Lake County." (citations omitted)); *Tyler v. Utah*, No. 2:07-cv-00004, 2008 U.S. Dist. LEXIS 103769, at *8 (D. Utah Dec. 23, 2008) (unpublished) ("[T]he Court construes Plaintiff's claim against the Sheriff's Office as a claim against Salt Lake County itself.").

[84] *See* 42 U.S.C. § 1983; *see also Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (noting § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred" (citation omitted)).

[85] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

solely by its employees or agents."[86]  "Instead, 'the government as an entity' may only

be held liable 'when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury.'"[87]  Ms. Harden fails to raise a triable dispute of fact as to

municipal liability.

"There are three requirements for municipal liability under 42 U.S.C. § 1983:

(1) the existence of an official policy or custom; (2) a direct causal link between the

policy or custom and the constitutional injury; and (3) that the defendant established the

policy with deliberate indifference to an almost inevitable constitutional injury."[88]  The

"municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to
> constitute a custom or usage with the force of law; (3) the decisions of
> employees with final policymaking authority; (4) the ratification by such final
> policymakers of the decisions—and the basis for them—of subordinates to
> whom authority was delegated subject to these policymakers' review and
> approval; or (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the injuries that
> may be caused.[89]

Ms. Harden's allegations relate to the actions of two Police Department

employees who are not named as defendants: Officer Williams and Supervisor Fisher.

---

[86] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[87] *Id.* (quoting *Monell*, 436 U.S. at 694).

[88] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

[89] *Waller*, 932 F.3d at 1283 (citation omitted).

She does not claim either had final policymaking authority.  And while her complaint contains conclusory references to some requirements of municipal liability, she fails to support her assertions with specific factual allegations or evidence.  For example, she alleges the Police Department failed "to train proper procedures."[90]  But her complaint does not identify any specific deficiencies in training or supervision.[91]  And on summary judgment, Ms. Harden identifies no evidence supporting a failure-to-train theory against the Police Department.  Likewise, while she describes the Police Department's chief as "the policy maker," she does not identify (or present evidence of) any formal policy relating to the alleged constitutional violations by Officer Williams and Supervisor Fisher.[92]  Nor does Ms. Harden offer evidence of "similar mistreatment of similarly situated individuals within the municipality," as required to show an informal custom.[93]  Finally, she offers no evidence that final policymakers ratified individual officers' actions.

---

[90] (Compl. ¶ 28, Doc. No. 1.)  Specifically, Ms. Harden states: "The City of Ogden's Police Department is the law enforcement agency in Ogden, Ut.  The Chief of The City [of] Ogden's Police Department is the policy maker as a law enforcement agency employed Officer Travis Williams alongside supervisor Fisher who was aware of his actions but failed to act, failure to train proper procedures."  (*Id.*)

[91] *See Waller*, 932 F.3d at 1285 (noting a "pattern of similar constitutional violations by untrained employees is ordinarily necessary" to plausibly allege deliberate indifference under a failure-to-train theory (internal quotation marks omitted)); *id.* at 1289 (finding no plausible claim for municipal liability based on failure to supervise, where the plaintiff did not allege "any facts regarding any supposed supervisory deficiencies").

[92] *See Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015) (A plaintiff "cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists.").

[93] *Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1289 (D. Utah 2019) (citing *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)).

In sum, Ms. Harden fails to come forward with evidence sufficient to create a triable dispute of fact under any theory of municipal liability against Ogden City.

Because Ms. Harden has not alleged facts or offered evidence supporting municipal liability under § 1983, Ogden City is entitled to summary judgment on Ms. Harden's claims.

II. Ogden School District's Motion for Summary Judgment

Ogden School District seeks summary judgment on Ms. Harden's First Amendment and Fourteenth Amendment claims.[94]  Because Ms. Harden does not bring a First Amendment claim against the School District, the motion should be denied insofar as it seeks summary judgment for that purported claim.  But where the School District's unrefuted evidence shows it is entitled to judgment as a matter of law on Ms. Harden's Fourteenth Amendment due process claim, the motion should be granted as to that claim.

A. First Amendment Claim

The First Amendment prohibits "any form of official retaliation for exercising one's freedom of speech."[95]  Ogden School District contends "a generous reading of Ms. Harden's complaint suggests that she alleges" a First Amendment retaliation claim.[96]  It argues Ms. Harden cannot prevail on her First Amendment retaliation claim because

---

[94] (School District MSJ, Doc. No. 28.)

[95] *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citation omitted).

[96] (School District MSJ 19, Doc. No. 28.)

her threats against staff were not constitutionally protected speech, and she was trespassed from school property solely based on those threats.[97]

The School District's decision to address a First Amendment claim in its motion is understandable, particularly where pro se pleadings must be construed liberally. However, even liberally construed, Ms. Harden's complaint cannot plausibly be read to assert a First Amendment claim against the School District. Ms. Harden's First Amendment claim is listed twice in the complaint—first as "Count I," then as the "First Cause of Action."[98] In "Count I," she describes various actions by Police Department employees, Officer Williams and Supervisor Fisher, which she claims violated her First Amendment rights.[99] But she does not allege the School District or its staff took any action in retaliation for speech. And in the "First Cause of Action," Ms. Harden expressly states her First Amendment claim is "[a]gainst the City of Ogden's Police Department," without mentioning the School District.[100] Likewise, when she alleges retaliation based on speech elsewhere in her complaint, it is in reference to Police Department employees, not the School District.[101] Accordingly, even reading the

---

[97] (*See id.* at 19–25.)

[98] (Compl. 4, 7, Doc. No. 1.)

[99] (*Id.* ¶¶ 28–31.)

[100] (*Id.* at 7.)

[101] (*See id.* ¶ 5 ("[O]fficer Travis Williams refused Ms. Harden on filing a policy report in retaliation claiming she had threatened him."); *id.* ¶ 6 ("Officer Travis Williams denied her law enforcement because of her 1st Amendment by exchanging words with James Madison staff . . . ."); *id.* ¶ 22 "[S]upervisor Fisher with [t]he City of Ogden Police Department . . . denied law enforcement claiming that she threatened to kill his officer Travis Williams.").)

complaint liberally, Ms. Harden does not bring a First Amendment claim against the School District.

Because there is no First Amendment claim against the School District, the School District's motion must be denied insofar as it seeks summary judgment on this claim.

### B.  Fourteenth Amendment Claim

The Fourteenth Amendment's Due Process Clause prohibits a state from depriving "any person of life, liberty, or property, without due process of law."[102]  "Due process comes in two forms, procedural and substantive."[103]  "Procedural due process ensures the state will not deprive a party of [a protected interest] without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of [a protected interest] for an arbitrary reason regardless of the procedures used to reach that decision."[104]

As the School District notes, the precise nature of Ms. Harden's Fourteenth Amendment claim is difficult to discern.  Ms. Harden identifies "Count II" and the "Second Cause of Action" as Fourteenth Amendment claims,[105] and mentions due process.[106]  Under these claims, she alleges the School District "[f]ailed to investigate

---

[102] U.S. Const. amend. XIV, § 1.

[103] *Timken v. S. Denver Cardiology Assocs., P.C.*, 155 F.4th 1227, 1238 (10th Cir. 2025).

[104] *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

[105] (Compl. 5, 7, Doc. No. 1.)

[106] (*Id.* ¶ 46.)

the abuse matter," "withdrew [her] children without a board meeting," and "never informed [her] that the children were being withdrawn."[107]  Elsewhere in the complaint, she asserts she was forced to homeschool her children because she did not live near other schools and lacked transportation.[108]  And she complains of being trespassed from school property.[109]

Applying a liberal interpretation, the court construes Ms. Harden's Fourteenth Amendment claim against the School District as alleging violations of substantive and procedural due process.  Based on the undisputed facts presented on summary judgment, Ms. Harden cannot prevail under either theory.

### 1.  Substantive Due Process

"Substantive-due-process claims are rooted in the Fourteenth Amendment Due Process Clause's 'substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests.'"[110]  "[T]he Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a fundamental right, and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the

---

[107] (*Id.* ¶¶ 37–39; *see also id.* ¶ 23 (alleging Principal Neilson and Assistant Principal Mangum "withdrew Ms. Harden's children without notice or a hearing with the board of education").)

[108] (*Id.* ¶¶ 24–25.)

[109] (*Id.* ¶ 11.)

[110] *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 932–33 (10th Cir. 2025) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).

judicial conscience"[111]  Where, as here, a plaintiff challenges tortious action by government officials rather than legislative action, the shocks-the-conscience approach applies.[112]  The Supreme Court has recognized parents have "a fundamental right to determine 'the care, custody, and control of their children,'"[113] which includes "the ability to direct [their] upbringing and education."[114]  But this right has limits; parents "do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject."[115]

The School District addresses two allegations as potentially implicating substantive due process: (1) Ms. Harden's exclusion from school property, and (2) the school's alleged abuse of her child.[116]  Where Ms. Harden did not respond to the School District's motion or clarify the basis of her due process claim, the court focuses on these allegations as well.  The School District is correct that the undisputed facts do not support a substantive due process claim relating to these allegations.

---

[111] *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (internal quotation marks omitted) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721–22 (1997); *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[112] *See Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018) ("[W]e apply the fundamental-rights approach when the plaintiff challenges *legislative* action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive* action.").

[113] *Lee*, 135 F.4th at 933 (quoting *Troxel*, 530 U.S. at 66).

[114] *Id.* (internal quotation marks omitted) (quoting *Troxel*, 530 U.S. at 65).

[115] *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998).

[116] (*See* School District MSJ 26–27, Doc. No. 28.)

First, the undisputed facts show the School District's decision to trespass Ms. Harden from district property was not arbitrary, and it did not deprive Ms. Harden of any protected right.  The School District presented unrefuted evidence that Ms. Harden threatened school staff during the October 2022 meeting, including threatening to hang them from trees.[117]  And following this meeting, she sent a series of threatening emails to school staff.[118]  Based on these threats, Ms. Harden's exclusion from school grounds was not arbitrary and does not shock the conscience.  Furthermore, the School District provided Ms. Harden with alternative options to communicate with the school regarding her children's education.[119]  In other words, her exclusion did not prevent her from directing her children's education.  Under these circumstances, Ms. Harden cannot establish her exclusion from school property violated substantive due process.

Next, Ms. Harden's allegation that school staff abused her child is insufficient to support a substantive due process claim on summary judgment.  While sexual abuse or egregious physical abuse at school may violate substantive due process,[120] Ms. Harden fails to present evidence of abuse rising to the level of a constitutional violation.  She

---

[117] (*See* Ex. K to School District MSJ, Video Recording at 3:47–4:05, Doc. No. 32 (sealed).)

[118] (*See* Exs. Q, R, & S to School District MSJ, Doc. Nos. 28-18, 28-19, & 28-20.)

[119] (*See* Ex. T to School District MSJ, Notice dated Nov. 4, 2022, Doc. No. 28-21 (outlining procedures for contacting the School District by email and phone, and noting education records could be accessed via online portal).)

[120] *See Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."); *Scott v. Mid-Del Sch. Bd. of Educ.*, 724 F. App'x 650, 654 (10th Cir. 2018) (unpublished) ("[P]unishments that are so grossly excessive as to be shocking to the conscience violate substantive due process rights." (quoting *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 656 (10th Cir. 1987))).

presented evidence of a report she made to child protective services via text message, indicating her child was not acting normally and had unspecified "marks."[121]  But she provided these texts without context, a supporting declaration, or any indication the "marks" occurred at school.  No reasonable factfinder could conclude, based on this evidence, that Ms. Harden's child suffered abuse rising to the level of a constitutional violation at school.  Moreover, abuse of a student implicates the *student's* due process rights[122]—not the parent's.  Ms. Harden does not purport to bring claims on behalf of her child in this case, and she could not do so without an attorney.[123]  Finally, Ms. Harden also claims the School District failed to investigate her report of abuse, but she identifies no evidence supporting this assertion.  And the School District presented unrefuted evidence that it investigated her report and found no evidence of abuse.[124]  For all these reasons, Ms. Harden cannot prevail on a substantive due process claim based on her unsupported child abuse allegation.

In sum, Ms. Harden does not present evidence sufficient to create a triable dispute of fact on her substantive due process claim, and the undisputed facts show the School District is entitled to summary judgment on this claim.

---

[121] (Pl.'s Ex. 317, Doc. No. 35.)

[122] *See Abeyta*, 77 F.3d at 1255 (explaining sexual abuse is an intrusion of the student's right to bodily integrity).

[123] *See Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) ("[A] minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.").

[124] (*See* Ex. C to MSJ, Mangum Decl. ¶¶ 18–23, Doc. No. 28-4.)

2.  Procedural Due Process

A procedural due process claim has two elements: "(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process."[125]  "[P]ublic school students have a protected property interest in public education."[126]  When a school official removes a student from school for "a lengthy time period," the school official completely deprives the student of a public education.[127]  In that situation, before the student's removal from school, procedural due process requires notice and some type of hearing.[128]

Ms. Harden alleges James Madison Elementary School "withdrew" her children "without notice or a hearing with the board of education."[129]  But according to the unrefuted evidence the School District presented, Ms. Harden herself removed her children from school.[130]  The school unenrolled Ms. Harden's children pursuant to the School District's "ten day drop" policy—only after they were absent for more than ten days.[131]  And the School District made several attempts to contact Ms. Harden about

---

[125] *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).

[126] *Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1257 (10th Cir. 2008) (citing *Goss v. Lopez*, 419 U.S. 565, 574 (1975)).

[127] *Id.*

[128] *Id.*

[129] (Compl. ¶ 23, Doc. No. 1.)

[130] (*See* Ex. C to School District MSJ, Mangum Decl. ¶ 28, Doc. No. 28-4; Ex. B to School District MSJ, West Decl. ¶ 21, Doc. No. 28-3.)

[131] (*See* Ex. C to School District MSJ, Mangum Decl. ¶¶ 28–30, Doc. No. 28-4.)

her children's attendance issues before unenrolling them.[132]  Further, the School District permits students to re-enroll after being disenrolled under the ten day drop policy,[133] but there is no evidence Ms. Harden attempted to re-enroll her children.

Based on these undisputed facts, Ms. Harden has not demonstrated the School District interfered with her children's right to a public education,[134] or her own parental right to direct her children's education.  Where Ms. Harden herself removed her children from school for more than ten days, and she could have re-enrolled them even after they were unenrolled, she has not shown the School District needed to provide notice or a hearing before the unenrollment.  And even if some process were required, she has not shown the process provided was inadequate, where the School District tried to contact her before unenrolling her children.

For these reasons, Ms. Harden cannot prevail on a procedural due process claim.  Accordingly, the School District is entitled to summary judgment on Ms. Harden's Fourteenth Amendment claims.

## RECOMMENDATION

Because Ms. Harden fails to adequately plead or present evidence of municipal liability for claims against the Ogden City Police Department, the Police Department is entitled to summary judgment.  Where Ms. Harden does not assert a First Amendment

---

[132] (*Id.*)  The School District also asserts in its motion that the ten-day drop policy is publicly posted on its website, but it provides no evidence to support this.

[133] (*See* Ex. P to School District MSJ, Doc. No. 28-17.)

[134] As noted, Ms. Harden cannot bring claims on her children's behalf without an attorney.  *See Meeker*, 782 F.2d at 154.  Accordingly, any claim based on her children's right to a public education fails for this additional reason.

claim against Ogden School District, the School District's motion should be denied as to

that purported claim.  But the undisputed facts show the School District is entitled to

summary judgment on Ms. Harden's Fourteenth Amendment claim.  Accordingly, the

undersigned recommends the district judge (1) grant the Police Department's motion for

summary judgment,[135] (2) grant in part and deny in part the School District's motion for

summary judgment,[136] and (3) enter summary judgment for the defendants on all

claims.  The parties have the right to object to this Report and Recommendation within

fourteen days, and failure to object may be considered a waiver of objections.[137]

DATED this 6th day of February, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[135] (Doc. No. 34.)

[136] (Doc. No. 28.)

[137] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).